IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BRANDI LEE DOLLINS, | § | |
|      PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:08-CV-503-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|      DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.    STATEMENT OF THE CASE

Plaintiff Brandi Lee Dollins brings this action pursuant to Section 405(g) of the Social

Security Act, Title 42 of the United States Code, for judicial review of the Commissioner of Social

Security's decision denying her claim for disability insurance benefits under Title II of the Social

Security Act.  Dollins applied for disability benefits on June 17, 2006, with an amended disability

onset date of April 12, 2002.  (Tr. 22, 79).  She met the insured status requirements through

September 30, 2002; therefore, disability must be established on or before that date for Dollins to

be entitled to disability insurance benefits.  (Tr. 10, 92).  *See generally Owens v. Heckler*, 770 F.2d

1276, 1280 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 n.1 (5th Cir. 1981).

After the Social Security Administration denied her application for benefits both initially and on reconsideration, Dollins requested a hearing before an administrative law judge (the "ALJ"). ALJ William Helsper held a hearing in January 2008. (Tr. 16-46). On March 28, 2008, the ALJ issued a decision that Dollins was not disabled or entitled to benefits because she had no severe impairment or combination of impairments through the date that her insured status expired. (Tr. 10-15). The Appeals Council denied Dollins's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). A five-step analysis is employed in determining whether a claimant is disabled. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). At the third step, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a listing alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.

*Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198.   A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995);  *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Boyd*, 239 F.3d at 704.  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272.  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000);  *Hollis*, 837 F.2d at 1383.

C.    ISSUES

1.    Whether substantial evidence supports the ALJ's determination at Step Two;

2.    Whether the ALJ considered all of Dollins' medically determinable impairments; and

3.    Whether the ALJ erred in refusing to hear testimony of Dollins' ongoing symptoms.

D.    ADMINISTRATIVE RECORD

1.    Medical History

The administrative transcript includes the following information about Dollins' disability claim:   She alleges disability as a result of uncontrolled diabetes.  (Tr. 96).  Dollins went to the emergency room in November 2000 with symptoms of ketoacidosis.[1]  She was evaluated and released with instructions to continue taking her current medications and follow-up with her physician.  (Tr. 276-77).  Dollins had a car accident in February 2001, which was attributed to a low blood-sugar level.  (Tr. 268).

Dollins' primary care physician opined in October 2001 that Dollins' diabetes was poorly controlled, but the ALJ noted that there were no medical records from the physician to substantiate his opinion.  (Tr. 11).  Dollins went to the emergency room that month for abdominal cramps, back pain, urinary frequency, and uncontrolled blood sugars.  The emergency room staff noted that she was not compliant with her diabetic diet.  (Tr. 257-58).  Dollins was diagnosed with a urinary tract infection.  (Tr. 260).  Dollins returned to the emergency room in December 2001 with complaints of vomiting and a blood sugar level of 513.  (Tr. 245).  She was diagnosed with mild ketoacidosis,

_____

[1]  Ketoacidosis is an accumulation of ketone bodies in the blood, which results in metabolic acidosis, and is often associated with uncontrolled diabetes mellitus.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 17, 997 (31st ed. 2007).

and was treated and released from the emergency room.  (Tr. 245-46).

In April 2002, Dollins was treated in the emergency room for complaints of abdominal pain. (Tr. 234).  The triage notes list a medical history of diabetes, hypertension, and kidney disease. Dollins also told the staff that she had taken a home pregnancy test, which was positive.  She was discharged from the emergency room and advised to remain on bed rest for 24 hours.  (Tr. 237).  A sonogram in May 2002 confirmed that Dollins was six-weeks pregnant.  She was hospitalized for poorly controlled diabetes, and was discharged after being instructed on insulin management, glucose control, and dietary control of her diabetes.  (Tr. 216-19).

Dollins' mother took her to the emergency room on June 11, 2002.  (Tr. 211-14).  Dollins was unresponsive and had a blood sugar level of 23.  She was given glucose and was released from the emergency room with a diagnosis of insulin-dependent diabetes mellitus with hypoglycemia and first-trimester pregnancy.  (Tr. 213).  Dollins' insured status expired at the end of September.

Dollins was hospitalized in November 2002 for severe preeclampsia.[2]  (Tr. 191-98). Labor was induced, and after the baby was delivered, Dollins underwent a tubal ligation.  (Tr. 191).

Endocrinologist C.W. Spellman, D.O., examined Dollins on July 7, 2003.  (Tr. 322-23). Dollins' diagnosis was Type I diabetes mellitus[3] and insulin-resistance syndrome.  Dollins used an insulin pump to administer her medication, but she was not monitoring her blood-sugar levels, which Spellman considered unacceptable.  He cautioned Dollins that he would prescribe no further diabetic

---

[2] Preeclampsia is a complication of pregnancy characterized by hypertension, edema, and proteinuria.  *Id.* at 1531.

[3] Type I diabetes mellitus is one of the two major types of diabetes mellitus, characterized by abrupt onset of symptoms, inadequate production of insulin, and dependence on exogenous insulin to sustain life.  *Id.* at 513.

supplies for her unless she monitored her blood-sugar levels.  (Tr. 322).

Dollins went to the emergency room in October 2003 for uncontrolled blood-sugar levels. (Tr. 187-88).  Her discharge diagnoses were diabetes mellitus and acute cystitis.  She was treated and released with a prescription for an antibiotic and instructions to follow-up with her endocrinologist.  (Tr. 188).  At a follow-up visit with Spellman on October 21, 2003, Spellman reported that Dollins had lost glycemic control.  (Tr. 319).  Dollins admitted that she had stopped taking her thyroid medication, and Spellman advised her that she must take her thyroid medication to optimize the usefulness of her insulin.  Spellman concurred with Dollins' request to stop using her insulin pump  and prescribed a different insulin regimen for her use.  He also instructed her to restart her thyroid medication.  He anticipated that it would take four to six months to optimize Dollins' glycemic control.  (Tr. 319).  In February 2004, Spellman again noted that Dollins had stopped taking her thyroid medication, which made it difficult to regulate her blood-sugar levels. Dollins also was not adhering to a diabetic diet.  (Tr. 318).  Dollins wanted to resume using an insulin pump and arrangements were made for this.

2.      Administrative Hearing

Dollins was twenty-six years old at the time of the administrative hearing.  (Tr. 19).  She testified that she completed the ninth grade, but she was currently enrolled in an online program to further her education.  She last worked in 2006 as a certified nurse's assistant, but stopped working because the stress prevented her from maintaining her blood sugars at a level high enough for work. (Tr. 20).  Dollins spent approximately three hours a day on her school work.   She also got her daughter ready for preschool, and she did some housework when she was able.  (Tr.20).  Dollins

required insulin injections three times a day.  (Tr. 21).

Dollins testified that she currently was not on a restrictive diet.  (Tr. 20).  She testified that she had been instructed to eat every two hours when she was pregnant, but had found it difficult to balance her diet and medication.  (Tr. 24-25).  She lived with her parents throughout her pregnancy because she was unable to recognize when her blood-sugar levels were too low.  (Tr. 25).  Dollins testified that she was under a lot of stress during her pregnancy because her husband changed jobs and they lost their house and car.  (Tr. 27).  She testified that her health continued to decline after her pregnancy and her diabetes had become more brittle.  She testified that low blood-sugar levels caused her to become disoriented, confused, and aggressive.  (Tr. 28).

Dollins' parents testified and confirmed the difficulties their daughter had managing her diabetes during her pregnancy.  They also described Dollins' erratic behavior when her blood-sugar levels were too low.  (Tr. 35-36, 41).  Dollins' father noted that these episodes occurred two or three times a month.  (Tr. 43).  Most of the time they were able to give her glucose tablets, sugary drinks or food to bring her blood-sugar levels up without summoning medical help.  (Tr. 43).

The ALJ also arranged for testimony from vocational expert Dillon Snowden, and asked Snowden to consider a younger worker with a limited education who was able to perform unskilled light work with no public contact and only incidental contact with coworkers.  Snowden testified that the claimant would be unable to perform her past relevant work, but there would be other suitable jobs, including bench assembler (with 734,000 jobs nationwide), bench inspector (with 293,000 jobs nationwide), or basic machine tending work (with 130,000 jobs nationwide).  (Tr. 31-33).

3.      ALJ Decision

The ALJ found that Dollins had not engaged in substantial gainful activity since her amended

onset date.  (Tr. 11).  He further found that Dollins had two medically determinable impairments,

insulin-dependent diabetes mellitus and Hashimoto's thyroiditis.  (Tr. 14).  After summarizing

Dollins' medical history, the ALJ acknowledged that Dollins had difficulty managing her diabetes

during her pregnancy, but he also noted evidence of her non-compliance with treatment.   (Tr. 11-

13).  He further found that she had no severe impairment during the relevant 2002 period that

satisfied the twelve-month duration requirement.   (Tr. 13-14).   *See* 20 C.F.R. § 404.1509.

Accordingly, the ALJ terminated his analysis at the second step of the sequential evaluation process

and concluded that Dollins was not entitled to disability insurance benefits.  (Tr. 15).

E.      DISCUSSION

1.      Severe Impairments

Dollins asserts that the ALJ's determination that she has no severe impairment is

unsupported by substantial evidence.[4]  An impairment or combination of impairments is not severe

only if it has such minimal effect on the individual that it would not be expected to interfere with

the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d

1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Dollins asserts

that she meets the de minimis standard of severity with respect to her diabetes and that the ALJ erred

in finding otherwise.

---

[4]  Dollins challenges the ALJ's determination as being against the weight of the evidence.  The court
construes this as a challenge to the existence of substantial evidence to support the  decision. Substantial evidence is
more than a mere scintilla, but less than a preponderance.  *Perez v. Barnhart*,  415 F.3d 457, 461 (5th Cir. 2005).

Dollins notes that the vocational expert testified that a person limited to a modified range of light work could not perform any of Dollins' past relevant work, which Dollins relies on as proof that her inability to engage in at least some basic work activities is apparent on the face of the record.[5]  *See* 20 C.F.R. § 404.1520(c).  The vocational expert's testimony was provided in response to a hypothetical presented by the ALJ during the hearing.  Those work-related limitations were not adopted by the ALJ in his decision as representative of Dollins' ability to perform basic work activities and do not undermine the ALJ's reasoning at Step Two.

Dollins also complains that the ALJ erred in relying on her questionable compliance with treatment.  (Tr. 13).  A failure to follow prescribed medical treatment can preclude an award of benefits.  *See* 20 C.F.R. § 404.1530(a), (b). Dollins argues that there are only a few documented instances of her failure to comply with the recommended diabetic diet and failure to properly monitor her blood-sugar levels, when the remainder of the record demonstrates that there is no easy remedy for her condition.  She refers the court to multiple notations in her medical records that she has uncontrolled diabetes and that one episode of hypoglycemia even resulted in a car accident, but none of this evidence necessarily shows that she was following a diabetic diet, properly monitoring her blood-sugar levels, or taking her medication as prescribed.  The ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence also supports the conclusion that was reached by the ALJ.  *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997).  *See also Steed v. Astrue*, 524 F.3d 872,

---

[5]  Basic work activities are the abilities and aptitudes necessary to do most jobs, which include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling, as well as necessary mental functions for the performance of most jobs.  *See*  20 C.F.R. § 404.1521(b).

874 (8th Cir. 2008). Substantial evidence supports the ALJ's determination that Dollins was not compliant with treatment prescribed to manage her diabetes.

Dollins asserts that the severe nature of her diabetes is further demonstrated by her need for constant supervision in May 2002. The ALJ acknowledged that Dollins had difficulty managing her diabetes during pregnancy, but this spanned only a nine-month period.[6] (Tr. 13). Dollins' medical records after the birth of her child and through the end of 2003 consist of one emergency-room visit and routine office visits with her endocrinologist. Her medical records predating her onset date are similarly sparse. The claimant must have a severe medically determinable impairment that lasts or is expected to last for at least 12 months to qualify for benefits. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). The ALJ's determination that Dollins had no severe impairment of twelve months' duration on or before the date her insured status expired is supported by substantial evidence.

2.     Combination of Impairments

Dollins contends that substantial evidence does not support the Commissioner's decision because the ALJ failed to consider the combined impact of all of her impairments. More specifically, she contends that the ALJ did not address her kidney disease, singularly or in combination with her other impairments. In determining whether an individual's physical or mental impairment or impairments are of sufficient medical severity that they could be the basis of eligibility for benefits, the Commissioner must consider the combined effect of all of the

---

[6] Dollins asserts that her treating physician regarded her pregnancy as a life-threatening condition, but she is referring to a statement issued by her physician in 2001 in support of her efforts to obtain a tubal ligation. (Tr. 315). This also does not detract from the ALJ's analysis of the duration requirement.

impairments without regard to whether any impairment, if considered separately, would be of such severity. *Bowen v. Yuckert*, 482 U.S. 137, 150, 107 S.Ct. 2287, 2296, 96 L.Ed.2d 119 (1987). *See also* 20 C.F.R. § 404.1523; SOCIAL SECURITY RULING 85-28.

The ALJ found two medically determinable impairments: diabetes and a thyroid condition. There is mention of kidney disease in the historical section of Dollins' medical records, (Tr. 211, 234, 245, 257, 273), but there is no indication that Dollins had any medical issues related to kidney disease during the relevant 2002 period.[7]  Dollins did not allege disability on the basis of kidney disease, and she did not testify about this impairment or any effect it had on her ability to function or perform basic work activities.

The ALJ confirmed that his decision was based on a consideration of all of the evidence. (Tr. 10, 14).  The ALJ cannot pick and choose among the evidence, but need not mention each and every piece of evidence in the file so long as he has developed the record fully and fairly and has sufficiently articulated the basis for his decision. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996); *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993).  Moreover, the ALJ's failure to expressly consider the existence or impact of Dollins' diagnosis of kidney disease was harmless.  Dollins has not shown, nor does the record indicate, that the omission prejudiced her substantial rights or casts into doubt the existence of substantial evidence to support the Commissioner's decision. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).      Dollins also contends that the ALJ ignored numerous other non-exertional impairments, such as her disorientation, confusion, and aggression, but the administrative record

---

[7]  Dollins also cites to medical records from 2004-2007, but these records are outside the relevant period.

indicates that these are symptoms of her diabetes when her blood-sugar levels are not controlled. They are not medically determinable impairments independent of her diabetes.  Moreover, the ALJ expressly considered Dollins' assertions that she became disoriented, confused and aggressive when her blood-sugar level dropped too low, as well as her parents' testimony about her bizarre or aggressive behavior during these episodes.  (Tr. 13).

The ALJ's decision reflects that he understood that he must consider Dollins' impairments both singularly and in combination.  (Tr. 10, 11, 14).  Dollins' contention that the ALJ failed to consider the combined impact of her medically determinable impairments does not present a basis for disturbing the Commissioner's decision.

3.      Excluded Testimony

Dollins contends that the ALJ's decision is manifestly unfair because he refused to allow testimony related to events that occurred after her insured status expired, yet he denied her application in part on the ground that she failed to meet the duration requirement.  During the administrative hearing in 2008, Dollins' mother recalled an incident that had occurred on Father's Day in 2006, but the ALJ prevented her from finishing her testimony and explained that the relevant issue was Dollins' condition before her insured status lapsed.  (Tr. 39-40). Dollins asserts that this was error because the testimony was relevant to establish the ongoing nature of her impairment and satisfy the duration requirement.

A claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir.1990).  Thus, the ALJ was correct when he explained that 2002 was the period under

consideration, but contrary to Dollins' suggestion, the ALJ did not arbitrarily refuse to consider evidence pertaining to periods after September 30, 2002. In his decision, the ALJ reviewed evidence from the earliest records provided, which date to 2001, through evidence documenting Dollins' condition more than a year after her insured status expired. (Tr. 11-13). This provided an adequate longitudinal picture of Dollins' diabetes before, during, and after her pregnancy and its effect on her ability to function during the relevant period. What the ALJ declined to consider was testimony about an incident that occurred almost four years after Dollins' insured status expired. The ALJ did not err in finding this testimony was immaterial and the exclusion of that testimony does not undermine the existence of substantial evidence to support the ALJ's determination that Dollins had no severe impairment or impairments that met the duration requirement on or before the date that her insured status expired.

RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 1, 2009. The United States District Judge need only

make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 1, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MAY 11, 2009.

_____/s/   Charles Bleil_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE</u>–PAGE 14